May it please the Court. Good morning, Your Honors. Owen Mardikin, arguing for the United States. I'd like to reserve three minutes for rebuttal. The District Court's holding that the deputies could not remove the defendant from his vehicle during a traffic stop was error. The fact that the District Court discredited two of the three arresting deputies does not change that result or warrant application of the exclusionary rule in this case. The District Court was clear in its order when it thought the constitutional violation took place in this case, and it was when the defendant was removed from his car during the traffic stop. Was there a constitutional violation, assuming that it was appropriate to ask him to step out of the car? Was there a constitutional violation with the extent, duration and manner in which the detention and search was carried out? There was, assuming that it is as Your Honor stated, and assuming that the District Court discredited the two officers, deputies who said that there was a furtive movement, then, well, the officer, even assuming that, the officers had probable cause to arrest him at that point. My question is, was the stop and the search, which went on for quite a long time, was that excessive? No. I mean, the search of the vehicle after he was arrested. Well, the detention, I mean, they find him in the garage, they block him in with their vehicle. Yes. They get him out of the car, and they detain him for quite a long time over what is at most a misdemeanor. Completed misdemeanor. Well, they detained him for about 7 minutes, which is actually less than the time that it took to figure out who he was, because according to Petrini's testimony, at the time that he arrived and saw the gun, they still hadn't determined exactly who they had in front of them. Can I ask you a question? Did district court make a credibility determination with respect to Officer Petrini? It did not. In fact, it's Sergeant Petrini's testimony, which is the only testimony about, you know, the precipitating event that led to this entire stop. So that's what you're hearing, because, I mean, the district court judge did make credibility determinations about the other officers who testified. Yes. You're appealing that determination, one, because there was no determination regarding the actual stop in terms of whether there was reasonable suspicion or probable cause, but also you're saying that Petrini's testimony is sufficient to establish either reasonable suspicion or probable cause. Yes. Can you just briefly tell me why? Yes. Well, because Petrini described a misdemeanor, at least one, reckless driving that occurred in his presence, and that precipitated. What did Petrini testify that he saw and heard? Because he's heard some things that he didn't see. Yes, exactly. So I'd like you to be specific in terms of what he saw and what he didn't see but heard. Yes. So he saw the Mercedes-Benz drive through the parking lot, as the other officers did. Petrini testified he didn't see the Mercedes-Benz. He only heard. Well, actually, Your Honor, that's – I'm just getting to that point. He didn't see anything. Petrini testified he did not see anything. No. I'm sorry. He did see, and this is pages – at about page 225, he saw the – I'm sorry. Before that. 225? Yes. So 222. I'm sorry. So he saw the car as it was driving in the liquor store parking lot. What he didn't see was after it left the parking – the lot, the tire screeched. That part he only heard. And there's also testimony that the liquor store closed early. So there was nothing suspicious about the car driving past and seeing that the liquor store is closed and just driving on. There's nothing suspicious about that. No. No. I'm not making that claim. I'm just saying – I'm just trying to separate what he saw, which was that bit. Okay. So he saw that, but then he says, After it left my line of sight, I heard an engine revving and tires screeching. And as I turned to my left and looked south on East 14th, I saw the trunk of it disappearing behind a building. Yes. Does he even say it was necessarily that Mercedes that made the sound? He just saw the trunk. He didn't necessarily connect the screeching. I'm sorry. I have a lot of trouble with this whole case because I have to admit, I read all the facts. I read the bench memo, the briefs. And I thought, this is a classic driving while black case. And then I read the testimony and found out that the person was black, a black man in a Mercedes. I thought, okay, and two of the officers actually lied? What is this case about? Your Honor, Sergeant Petrini does connect that up. On page 222 to 223, he does say that, in his opinion, it was that car that was making that noise. His opinion. Yes. And that's why they had to follow him to a place where he wasn't even driving. The misdemeanor is over, and he's parked in a private parking lot, and they have to seize him and then search the car? What is that all about? Well, Your Honor, I mean, the misdemeanor is completed. But under Grigg, that case talks specifically about misdemeanors that are not public safety and explicitly not reckless driving misdemeanors. Well, you agree we totally disregard the two officers who lied and were proven to have lied about everything in their police reports because the video absolutely contradicts what they said. I am not standing here to challenge any of that aspect of the district court's findings. Let me ask you, were you the trial attorney? I was not, Your Honor. Well, you might want to have a conversation with the trial attorney. I mean, what was available to the district court in determining that these officers were lying was available to the lawyer, correct? The video, Your Honor, is saying? Well, the district judge, with ample evidence in the record to support her, concludes without hesitation that two of the officers are lying. Is the information that was available to the district judge upon which she concluded that the two officers were lying, was that available to the U.S. attorney who put that testimony on the stand? Well, I mean, obviously the assistant U.S. attorney was there when that testimony happened. At the point that they were testifying, that their testimony was impeached, that U.S. attorney did not have, hadn't seen the video. So that's what I think Judge Fletcher is trying to get at, is how come? Why didn't the U.S. attorney know that there was videotape that was going to prove his two key witnesses liars? Well, I mean, seriously. That's something. I wish that assistant had that video. I wish that the agents had looked for it. How does the video show up? You're saying that the AUSA didn't even know of the existence of the video? Exactly, until it was proffered in court. So the AUSA did not go into court thinking there was any kind of impeachment. She didn't scorn impeachment. So it was a good old-fashioned and successful ambush. It was, well, it was, I mean, successful. It did. You get the guys to testify. You get the guys to testify not knowing there's a video, and all of a sudden there's a video that shows they're lying. Yes, there is. Exactly. That's what happens. You know, I'm not very sympathetic to the cops here and in a way to the government. I mean, the whole thing is so, it just smells so bad. I understand that it's not sufficient to justify what the district court did purely as punishment for lying cops. I got that. On the other hand, this case does not smell very good. Well, there's a third officer here who was not impeached. I understand that. And the judge thought there was no basis to challenge the actual stop. Did they make? The judge made that determination. Yeah. Was there a determination? Yes. The judge said from the bench, she says up to the point of the budget in, I don't see any problem in this case. Well, what was the probable cause to stop? I mean, the car was parked in a private garage. So and then also, I mean, we have the, it was blocked in on the video. The video shows that police came and blocked in the car. What was the probable cause for doing that? That's the seizure. They were not free to move. Well, the stop was justified by the earlier driving behavior. That's what gave the officers probable cause to stop the car. And Grigg would not change that. And the driving behavior in terms of evidence that's properly in front of us is Perini who hears the tires screeching. And then he turns around and he sees the trunk disappearing around the corner. Yes. Now, does that mean that any time somebody screeches, revs his engine and burns rubber, that that is a misdemeanor? If somebody on a public road squeals the tires and burns rubber, then I think that's probable cause that it's reckless driving. I thought you have to have a lack of traction. There's no evidence here that there was a lack of traction. Isn't that the California law under Grigg? No. Well, Your Honor, reckless driving is just driving with a wanton disregard for public safety. Did any one of the three cops actually see reckless driving? I'm sorry? Did any of the three police officers actually see reckless driving? Well, the two others testified that they saw. Understood that they're discredited. But Petrini says that he heard it just after he saw this car drive away and there were no other cars in the area. And so he linked it up with that. Were there other officers? Would there be other officers to testify about that? There were some other officers at the scene, but there's no record of them at that point. There were, I think, five officers who were there. But some showed up later. There weren't five officers trying to find this person and his Mercedes because he screeched his tires. No, Your Honor. There were just, there were, I believe, five officers who were standing at the liquor store when this car drove in. So only three of whom testified. If I've gone way over, if I could indulge just 30 seconds. I'll give you a rebuttal. How about? Thank you. I appreciate that, Your Honor. Good morning, Your Honors. Your Honors, the government's reading of what happened in this case misstates the evidence, it misreads the opinion, and it misses the point. At no point during the arguments or in the judge's opinion does the court find that there's probable cause to affect a traffic stop, and in fact, there is. Well, it does make a reference, the statement that was referenced. How do you not interpret it that way? It says something. I don't have a problem. The court said I don't have a problem with the stop up until, I think, at a certain point, I think. Yes, Your Honor. And I understand that's an, you know, it's not a declarative. I make a finding that there was either reasonable suspicion or probable cause. And so I think that's one of the things, I guess, we're looking at to see what's the appropriate thing to do. Do we send it back for her, or is that sufficient? Or you're saying it's not sufficient, don't send it back? What's your position? It's not sufficient, don't send it back. Why not? The courts, what the courts said at the hearing, I agree that the court did say that at this point, you know, I don't have a problem with it. She then says, I'm going to look at the transcript, I'm going to look at all the evidence. And so it's not, I don't think we can find it as a finding. And it's clear that she had, you know, credibility troubles with the sheriff's officers, and there's clear basis for her to have that. But that's not a basis to overturn. I mean, it's just because to punish the police based on that. So help us understand then what the, what we need to do here, because now the government is saying, but, you know, she didn't discredit this one other officer. Right. And the question is, is his testimony sufficient now, or would there be further factual development to address? Because she never, if you, if we take your position, she never made a decision. Right. I mean, should we be the ones deciding whether there was reasonable suspicion? Is there any potential for further factual development, or for us to determine whether there's probable cause? So, Your Honor, two things. One is the court opinion does not state that there is reasonable suspicion. Their background information, background information are not factual findings. And as Your Honor's indicated, one clear finding is that two of the officers who testified were non-truthful. Let's shake that out. And let's just focus on Petrini. Exactly. So tell me why Petrini's testimony is not sufficient for reasonable suspicion or probable cause. So two things, Your Honor. One, I don't believe that Petrini's testimony is sufficient because, as Your Honor has indicated, he heard something. He heard momentary screeching of tires. And that, I don't believe, is enough based on that alone. But, Your Honor. Those are specific and articulable. Let's talk in terms of definitions and standards. I mean, reasonable suspicion is specific and articulable facts. You know, probable cause is a fair probability that the crime may have occurred. So, Your Honors, I mean, what I would like to, because I see my time is moving quickly. Go ahead. I would like to jump to what I think the court really did here, which is the court didn't necessarily address was there reasonable suspicion, wasn't there. She did find two officers not to be credible. What was more important, Your Honors, is that this opinion is based on Grigg completely. It's a completed misdemeanor. And the reason we know that that is the decision, the basis for the judge's decision, is that Grigg is the only case that the district court cites when she refers to the standard for reasonable suspicion. If Your Honors look at the order, she says the constitutional issues are well established in that dispute. And then she cites Grigg for the proposition that government interest in investigating possible criminal conduct based on an officer's reasonable suspicion may be outweighed by the Fourth Amendment interest of the driver in remaining secure from intrusion. That's the case she cites. But is Grigg distinguishable here? Because Grigg dealt with somebody playing loud music. Yes. And did not affect the public safety. Right. So can you address that point? Yes. So Grigg, Your Honors, Your Honors, right, Judge McGill, Grigg dealt with playing music. But Grigg also set out that standard that said evaluation of a Terry stop in the context of a completed misdemeanor should tend to give primary weight to a suspect's interest in personal security. And the Court also says the absence of a public safety risk reasonably inferred suggests the primacy of a suspect's Fourth Amendment interest. The Court in this case makes factual findings as to the lack of public safety issue. The Court says at ER 8 the precipitating event was a completed traffic violation with no immediate threat to the public shown or apparent. The Court later says on ER 9 there's no indication the defendant was under the influence, the vehicle was parked, and presumably turned off. So this is a case where the Court makes factual findings. And they're not clearly erroneous that there is not a public safety issue. Now, I know that there are cases that talk about recklessness. Those cases are distinguishable. For instance, the Garcia case is a case where it's a moving car and the car is weaving back and forth and the officer is allowed to stop it. Scott v. Harris is a high-speed chase and it's reckless driving and the officers are allowed to ram the car. This is a case where the most that is seen or heard is screeching tires. This is not, and the Court finds that there's no public safety issue. So just because the government opposes and says is this reckless driving and the officers say this could be reckless driving doesn't mean that this case, therefore they're allowed to necessarily investigate when it's a completed misdemeanor. At most, there's no public safety issue. And another thing, Your Honors, is all of the cases that discuss recklessness and driving, the cars are driving and then they're pulled over. And so the conduct is ongoing or seen. This case, at most, it's minor conduct. It's completed. The Court specifically finds no public safety issue. And she finds that under the circumstances here, the Court, the law enforcement officer's actions in pulling Mr. Hill out of the car violated his Fourth Amendment right against intrusion. And clearly handcuffing goes far too much in this case. I mean, pulling him out, it is true if this were a legitimate stop and the Court found that this was a legitimate stop, then you could pull somebody out of the car. But that's not the Court's basis. Let me ask you this, if I may. It's against the circumstances of the video and so on. The AUSA was not aware of the video until you put it on. Is that what happened? That's correct. So how did you get the video? I'm sorry? So how did you get your hands on the video? We did investigation like we always do. We went to the motel. Our investigator asked, looked in the garage, saw that there was a camera, and we obtained the video. And you successfully got the officers on the stand not knowing the video to tell a lie. That's pretty good. Okay. Well, and what's striking is as the cases we see in the public today, there's video, there's camera. This is the officer's credibility against himself. That's it. Your Honor, I could go into the inevitable discovery. I think there's factual findings by the Court that it wasn't proven. I think lying officers cannot be the basis for finding that somehow this was routine and that there were demonstrated historical facts. The other case is time alone is not enough to find that inevitably they would have discovered the gun because this wasn't a standard stop. The officers have no credibility. It's the government's burden, and they didn't meet it. Finally, Your Honors, the Court can affirm on anything in the record. And given that the judge cites Grigg as the case for reasonable suspicion and makes those factual findings, it's amply supported in this case. If Your Honors were for some reason to find that somehow it can't be supported, the proper approach would be to remand and to ask the Court to clarify, did you really mean Grigg? Did you really mean the officers lacked credibility? But I think it's clear. And the Court is also very strong in its wording about the reasoning for the proper remedy in terms of law, in terms of lying officers, as well as what it teaches the district, as well as what it teaches the government as well, that the government needs to make sure that their officers act within the means that are set for them. Who bears the burden of proving the lawfulness of the stop, the government or the defendant? Well, it's the stop itself. This is a seizure and search without a warrant. So the government bears the burden of supporting the seizure and search. In terms of the stop, the car was stopped already. Some of the cases talk about alternate means. The police could have knocked on the window. There could have been a consensual encounter. No, no, no. But my question is burden of proof. And you say the government has the burden. The government can object to that or can say that that's wrong. But that means if it's a closed case and the government hasn't put on the evidence, the government loses. That's true. And that's what the Court found, and the Court made findings to support that. Thank you, Your Honors. All right. So you can have a minute to rebut. Thank you, Your Honor. My main question for you in your minute is, is the citing of Grigg enough? Apparently the district court cited Grigg in its decision. Yes. And is that enough? No, Your Honor. Why not? And I'd just like to point out page 1083 of Grigg, which is the actual holding, the sentence where the Court says, We hold under the balancing test set forth in Hensley a court reviewing the reasonableness of a stop to investigate a past misdemeanor or other minor infraction must assess the potential risk to public safety associated with the nature of the offense. So it's the nature of the offense, the actual driving behavior, not the fact that the car was parked. But the district court, she's saying that the district court, Ms. Leavitt, is saying that the district court cited Grigg in its decision. It cited Grigg, but it didn't make, I don't believe, and I think it's a little unclearly written, but the district court did not make the finding that she says. On that page, the district court says, With no threat to public safety shown, the district court's talking about while the car was parked, you know, because there was no furtive movement. She didn't believe that happened. So she's talking about the officer's behavior at the time the car was parked, not Grigg, meaning it's a completed misdemeanor. They're not even allowed to investigate it because that talks about public safety of the nature of the offense. The police cars that were in front of the liquor store, were they unmarked police cars? One was unmarked. One other one had lights in the front. So whether it was painted or not, I don't know. I mean, it didn't have lights across the top. It had lights in the front. But I don't know if it was, I don't think it was completely unmarked. The other one clearly was. But just in closing, I mean, it gives me no pleasure to come before this Court when a district court has discredited two officers. But everything in this district court's order and everything she said from the bench ---- You know, this case just smells not only were the officers lying. What you've got is a guy driving, a black guy driving a fancy Mercedes slowly through the liquor store parking lot. And after he leaves, he screeches his tires basically psychologically saying, bleep you to the officers. They're offended. They search for him for 15 minutes. They finally find the car in a garage in a parking lot. And at that point, they block him in. They finally find a gun. They lie about what they did. And you're standing up here defending the ---- objecting to what the district court did. I'm saying that the district court said that stock was all right. Yeah. And that changes the color of the situation. Yeah. But this case just stinks to high heaven to me. Thank you. All right. Thank you. All right. United States v. Hill is submitted. And we'll ---- oh, we have previously submitted United States v. Zhang. And we'll take Cooper v. Chin.
judges: Wardlaw, W. Fletcher, Murguia